[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The Plaintiff wife, 42, whose birth name is Reynolds, and the defendant husband, 44 married on April 12, 1980 in Palm Beach, Florida. Three children have been born to the plaintiff, issue of the marriage:
Christopher T. d.o.b. 9/21/85
Reynolds Peter d.o.b. 3/21/89 and
Alexandra C. d.o.b. 8/17/96
The court has jurisdiction of this action which was returned to the 4th Tuesday of February 1998 by virtue of the plaintiff's continuous residence in this state for over one year prior to filing the complaint. It sought a legal separation The defendant filed a counter-claim seeking a legal separation which was amended to seek a dissolution. CT Page 2153
The parties filed a written custody agreement dated January 15, 1999 which the court has accepted and which will he incorporated as an order in the judgment
The parties have also stipulated in writing that as of January 26, 1999, the fair market value of the marital home located at 47 Pecksland Road, Greenwich, CT is $2,100,000.00 The premises are encumbered by a first mortgage balance of $285,000.00 and a home equity loan balance of $25,000.00. The parties hold title jointly.
The plaintiff has an A.B. Degree in English awarded her in 1979. She worked in the interior design industry for varions employers until 1984. Since then she has devoted her time to raising the children. She brought a $150,000.00 brokerage account to the marriage, using it (Plaintiff's Exhibit F) to purchase, in succession, several apartments in N.Y.C. for their home. Upon moving to Connecticut the plaintiff furnished the funds for purchase, from her separate estate, of the current marital home, acquired in 1988 Title was made joint upon a refinancing The plaintiff has estimated that she has spent $500,000.00 on improvements made to the home during the last decade. The defendant claimed to have contributed $200,000.00 to the home's improvements but no corroborating evidence was produced.
The defendant received a B.A. degree in economics in 1978. He had minimal assets at the time of the marriage. The defendant was a foreign currency trader at the time of the marriage until 1985 when he joined Citibank in a sales oriented position in foreign exchange. After a year the defendant joined a venture capital firm as a currency trader, remaining there until 1992 He then joined Swiss Bank as Director of Sales of foreign exchange.
In early 1997 the defendant had certain of his accounts reassigned to a senior director. He was told to develop a European customer base. The defendant discussed these job related problems with the plaintiff. The parties then began planning for a move to Breckenridge, Colorado, where the defendant would trade for his own account. He planned to use some of the money to be obtained from the sale of the marital home for trading. On June 6, 1997 he was handed a "Final Warning" memo advising him his job performance was unsatisfactory, stating progress would be reviewed on August 15, 1997 and concluding with the warning that no improvement "may result in your termination without further CT Page 2154 notice" (Plaintiff's Exhibit E). A few days later the defendant left his position voluntarily. He did receive a severance of three months salary as well as a subsequent distribution of $72,000.00 gross, some of which he used for trading purpose. He did not turn a profit. He has not been steadily employed since leaving Swiss Bank. Currently he has a trading desk as a day trader, at Jencor Strategic Fund Management, Inc. located in Greenwich. He is considered self employed. After expenses he generated no net income for 1998
Until the difficulties of 1997, the defendant had been employed steadily. An analysis of his W-2 income during the marriage (Defendant's Exhibit #1) totals $2,447,892.00 gross W-2 earnings and $1,658,773.00 net after all taxes, FICA and Medicare deductions. The family lifestyle was also supported by the plaintiff from her funds, much of which was received in 1986 or 1987 when her family's business was sold to Borden Co. She received Borden stock maintained in her Kidder, Peabody brokerage account. The December 31, 1987 statement (Plaintiff's Exhibit G) lists a net portfolio equity of $2,414,859.00. The plaintiff introduced a "cash flow report" for 9/1/89 through 8/31/98 (Plaintiff's Exhibit 1) totaling $1,568,342.00. An "itemized categories report" (Plaintiff's Exhibit J) itemized all of the plaintiff's withdrawals from her brokerage accounts During the course of the marriage the plaintiff signed every check.
The marriage collapsed in December, 1997 when the defendant became physical with the plaintiff, knocking her down resulting in her sustaining facial bruises. (Plaintiff's Exhibits A, B and C) The defendant later apologized The defendant vacated the marital home around the end of January, 1998.
In addition to the equity in the marital home the plaintiff lists household furnishings and jewelry of unknown value, a checking account of nominal value, a brokerage account valued at $47,032.00, a 50% interest in a Vanguard account valued at $14,450.00, an IRA account valued at $21,312.00 and 50% of a 1995 Jeep valued at $10,000.00. She receives a $500.00 quarterly from a trust and monthly interest and dividends totaling $285.00. The defendant lists, in addition to his interest in the marital home, bank accounts totaling $11,012.00, his 50% interest in the Vangard account, IRA's totaling $279,727.00, a Greenwich Country Club Bond for $15,000.00, an account at Jencor Trading LLC containing $29,000.00, Vertex Partners interests totaling $40,576.00 known as Sevin Rosen #5 and #6, and cash value in CT Page 2155 three life insurance policies totaling $33,692.00, said policies having a total face value of $496,151.00.
On January 5, 1988 the plaintiff lent the defendant $100,000.00 as evidenced by a promissory note due in one year together with interest (Plaintiff's Exhibit K). It has never been paid.
After the present action was commenced the plaintiff turned $130,000.00 over to the defendant which he has been using for living expenses and to fund the pendente orders. The defendant has also drawn on the home equity loan.
In 1991, the plaintiff withdrew $150,000.00 from her Paine Webber brokerage account, drawing the check payable to Millburn Currency Fund for trading. The venture was closed after sustaining losses and the $130,000.00 balance was transferred to the John W Henry fund, a jointly held account. It was this sum that the defendant was allowed to take and use after this litigation began.
The court finds that the defendant's earning capacity exceeds the maximum child support guidelines amount of $1,750.00 weekly and therefore, the award in this case is determined on a "case-by-case basis", section 46b-215a-2(a) The court has concluded that an unallocated order is appropriate. The defendant's earning capacity is found to be a minimum of $200,000.00.
Although the defendant seeks term limited alimony the court finds that the facts of this case do not satisfy the tests set out in Ippolito v. Ippolito, 28 Conn. App. 745 The unallocated order will need to be reviewed as each child attains 18 years of age as a minimum.
Having reviewed the evidence in light of the statutory criteria of § 46b-81 and § 46b-82 as well as relevant case law the court enters the following decree.
1. Judgment is entered dissolving the marriage on the ground the marriage has broken down irretrievably. Each party is declared to be unmarried.
2. The defendant shall pay the plaintiff the sum of $5,200.00 per month, during his lifetime, until her death or remarriage. CT Page 2156 Conn Gen stat § 46b-86(b) applies to this order. A wage withholding order is entered. The court notes an advisement of rights and waiver of immediate wage withholding has been filed.
3. The jointly owned real property located at 47 Pecksland Road, Greenwich, shall be placed on the market for sale immediately and the net proceeds of sale shall be divided 75% to the plaintiff and 25% to the defendant, the court retains jurisdiction over the sale of the real estate and either party may move for articulation of the process.
4. The joint Putnam Trust bank and Vanguard accounts shall be closed and the proceeds equally divided.
5. The defendant shall transfer to the plaintiff the Fidelity IRA with a value as of January 11, 1999 of $128,681.00.
6. The defendant shall share equally with the plaintiff any distributions, net of taxes, and capital contributions made after 12/31/98 by the defendant from Vertex Partners, Sevin Rosen #5 and #6 when received.
7. Except as provided supra, each party shall retain the assets standing in his or her name, as set forth on the respective financial affidavits.
8. Custody and Visitation is ordered in accordance with the custody agreement executed by the parties and attached hereto and incorporated herein. The defendant shall designate the children as a group as primary beneficiary of $485,000.00 of life insurance on his life for as long as he is obligated to pay her unallocated alimony or child support. Thereafter the defendant shall maintain $200,000.00 of life insurance for so long as he is obligated to pay alimony to the plaintiff, but not beyond his 60th birthday.
9. The defendant shall maintain medical insurance coverage for the children until each child attains age eighteen (18) or completes his or her high school education, whichever event shall first occur. The parties shall share equally the cost of any reasonably necessary uninsured medical expenses for the children The defendant shall cooperate with the plaintiff in transferring his group medical insurance coverage to individual coverage for her benefit as provided by COBRA. CT Page 2157
10. The defendant shall indemnify the plaintiff with respect to prior federal and state tax returns filed jointly by the parties.
11. Each party shall be responsible for his or her own attorney's fees incurred in connection with this matter.
12. Each party shall be responsible for the debts listed on the respective Financial Affidavit of the party, except the defendant's note dated 1/5/88 for $100,000.00 is cancelled.
13. The plaintiff is awarded the contents of the home as her sole property.
Counsel for the plaintiff shall draft the judgment file.
HARRIGAN, J.